UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| GARY REED & TOM VEVEA AS TRUSTEES OF THE MINNESOTA LABORERS PENSION FUND, AND EACH OF THEIR SUCCESSORS, | Civil No. 10-CV-4329 (JRT/LIB) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| CURRY CONCRETE CONSTRUCTION, INC, | |
| Defendant. | |

This matter came before the undersigned United States Magistrate Judge upon the Motion of the Defendant, Curry Concrete Construction, Inc., to Dismiss Plaintiff's claims. A hearing on the Motion was conducted March 3, 2011. The case has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636(b)(1). For reasons outlined below, the Court recommends that the Plaintiff's Motion to Dismiss be DENIED.

**I.   BACKGROUND**

The following facts form the basis of the Complaint. Plaintiffs Gary Reed and Tom Vevea are Trustees of the Minnesota Laborers Pension Fund (hereinafter "Fund"). (Compl. ¶ 1). The Fund is a multi-employer, jointly trusteed fringe benefit plan created and maintained pursuant to section 302(c)(5) of the Labor Management Relations Act ("LMRA") and administered in accordance with ERISA. Id. The Fund brings its claims pursuant to ERISA

sections 4221(b)(1), 4203(b), 4301(a), 502, and 515 (29 U.S.C. §§ 1401, 1382, 1442, 1132, 1145).  (Compl. ¶ 4).

On June 7, 2005, Defendant Curry Concrete Construction, Inc. ("Curry Concrete") executed an Acceptance of Agreement in which it agreed to be bound by a Collective Bargaining Agreement ("CBA") between the Highway, Railroad and Heavy Construction Contractors and the Laborers' District Council of Minnesota and North Dakota.  (Compl. ¶ 6).  The CBA required the Defendant to make contributions on behalf of its employees to the Fund.  (Id. at ¶ 7).  The CBA expired on April 30, 2008.  (Compl. ¶ 6).

On April 30, 2008, the Defendant no longer had an obligation to participate in the fund.  (Compl. ¶ 9).   However, upon information and belief, the Defendant continues to perform work in the jurisdiction of the CBA of the type for which contributions were previously required.  (Compl. ¶ 10).  As such, pursuant to 29 U.S.C. § 1383(b), Defendant completely withdrew from the Fund and became subject to withdrawal liability.  (Compl. ¶ 11).  The Fund demanded payment initial payment for withdrawal liability of $100,568.00, but the Defendant did not pay.  (Compl. ¶¶ 12-18).  The Fund asserts that the $100,568.00 was calculated in accordance with the Trust Agreement, Withdrawal Liability Policy and ERISA.  (Compl. ¶ 20).

The Fund again demanded withdrawal liability and provided the Defendant with a schedule of payments detailing when withdrawal liability would be due.  (Compl. ¶ 14).  Particularly, the Fund broke down payments to allow Defendant to make five quarterly payments of $9,881.00 and a tenth payment for $8,523.00. (Compl. ¶ 20).

In addition, the Fund included the calculations it made to determine liability in a worksheet.  (Compl. ¶ 15).  However, Defendant did not pay the initial quarterly payment or the second quarterly payment.  (Compl. ¶¶ 16, 19).

The Fund seeks payment of the withdrawal liability and all accrued interest as provided for under ERISA § 4219(c)(5). (Compl. ¶ 22). Moreover, the Fund requests liquated damages under the Trust Agreement and attorneys fees and costs under ERISA, the Trust Agreement, and the Withdrawal Liability Policy. (Compl. ¶ 24).

Presently before the Court is the Defendant's 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. The Defendant argues that the Fund has not asserted enough facts in its Complaint entitling it to relief.

## II.   STANDARD OF REVIEW

Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This requires a Plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 155.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations and quotations omitted). Plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level." Id. Courts must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against each defendant "across the line from conceivable to plausible." See Ashcroft v. Iqbal, 120 S.Ct. 1937 at 1950, 1952 (2009). However, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." Farnham Street Financial, Inc. v. Pump Media, Inc., 2009 WL 4672668 at *4 (D. Minn. Dec. 8, 2009) (citing Iqbal, 129 S.Ct. at 1949).

When analyzing a Plaintiff's complaint, the Court must take the plaintiff's factual allegations as true. Id. at 1949-50. Facts pled which "give the defendant fair notice of what the claim is and the grounds upon which it rests" meet the 12(b)(6) standard. Twombly, 550 U.S. at 555. When analyzing a complaint on a 12(b)(6) motion to dismiss, courts "should read the complaint as a whole, not parsed piece by piece to determine whether each allegation in isolation is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## III.   ERISA WITHDRAWAL LIABILITY

The Fund brings its claim pursuant to ERISA. Congress enacted ERISA to regulate private sector retirement plans. Initially, ERISA did not adequately protect plans from the adverse effects caused by the withdrawal of one employer from a multiemployer plan. Seaway Port Auth. v. Duluth-Superior ILA Marine Ass'n Restated Pension Plan, 920 F.2d 503, 505 (8th Cir. 1990). To address this concern, Congress enacted the Multiemployer Pension Plan Amendments Act ("MPPAA"). Milwaukee Brewery Workers' Pension Plan v. Jos. Schiltz Brewing Co., 513 U.S. 414, 16 (1995). The act provides that when an employer who completely withdraws from a multiemployer pension plan, the employer must pay a sum determined under guidelines set by Congress. Id. "This payment, labeled as the withdrawal liability, protects the financial stability of the plan." Id. (citations omitted). Thus, ERISA discourages voluntary employer withdrawals by imposing withdrawal liability in an amount equal to the employer's proportionate share of the plan's unfunded vested benefits. 29 U.S.C. §§ 1381 & 1391.

When an employer withdraws from a plan, the plan is required to determine the amount of the employer's liability and notify the employer of the amount and demand payment. 29 U.S.C. § 1382.  ERISA provides for informal review of the withdrawal liability amount within 90 days of notice.  29 U.S.C. § 1399(b)(2).  If the informal review is unsuccessful, ERISA provides that the dispute between the employer and the plan shall be submitted to arbitration. 29 U.S.C. § 1401(a)(1).  Upon completion of the arbitration proceedings, either party may bring an action in federal district court to enforce, vacate or modify the arbitrator's award. 29 U.S.C. § 1401(b)(2).

As relevant to this case, complete withdrawal for employers engaged in the building and construction trades, as Defendant is, occurs when:

> (A) an employer ceases to have an obligation to contribute under the plan, and
> (B) the employer—
>   (i) *continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or*
>   (ii) resumes such work within five years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

29 U.S.C. 1383 (emphasis added).  Under these provisions, employers who have ceased making contributions to pension plans on behalf of building and construction industry employees are subject to withdrawal liability only if they continue to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or if they resume such work within five years after the date on which the obligation to contribute ceased.

## IV.   DISCUSSION

Before turning to the merits of Defendant's arguments, the Court must first address what encompasses the Complaint.  While the Fund did not attach any documents to the Complaint, it

did refer in detail throughout the Complaint to provisions of the CBA, the Acceptance of the CBA, and the Withdrawal Liability Policy, and it provided full copies thereof in its materials submitted in opposition to the Defendant's motion to dismiss. (Skoog Aff. [Docket No. 9], Ex. A-C). In response, Defendant argues that the additional documents submitted by the Plaintiff should not be considered because they are "outside the four corners of the Complaint." (Def.'s Reply Mem. [Docket No. 11], p. 2).

The Defendant's position stands in opposition to case law regarding this issue. Documents referred to in the Complaint constitute part of the Complaint itself and can be considered by a court when deciding a motion to dismiss. Moses.com Securities, Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) (citing Venture Assoc's Corp. v. Zenith Data Sys., 987 F.2d 429, 431 (7th Cir. 2003) (stating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim")). As such, in the following analysis the Court considers the CBA and the Acceptance of Agreement to be part of the Complaint. However, the Court declines to consider the Withdrawal Liability Policy because the policy is dated November 11, 2008 which is after the CBA at issue in this case expired in 2005. (Skoog Aff., Ex. C). The Defendant could not have contemplated being bound by a 2008 document at the time it signed the CBA. Therefore, while the Court considers the CBA and Acceptance of Agreement, it declines to consider the Withdrawal Liability Policy as part of the Complaint.

Turning to the merits of Defendant's arguments in support of its motion to dismiss, the Defendant contends that the Fund has not asserted enough facts to support a "plausible inference" that the Fund is entitled to relief. (Def.'s Mem. [Docket No. 5], p. 4). Specifically,

the Defendant first claims that the Fund did not allege any specific facts as to the continuing work supposedly performed by Defendant falling under the jurisdiction of the CBA.  Second, according to Defendant, the Fund did not assert any specific facts as to how it calculated the withdrawal liability.  Instead, Defendant claims, the Fund merely relies on generalized and naked allegations in support of its claim.

Essentially, in a complaint alleging ERISA withdrawal liability, a plaintiff "need only show that it made a demand for interim payments under 29 U.S.C. § 1382 and that payments were not made."  Teamsters Pension Trust Fund of Philadelphia and Vicinity v. Transworld Port and Distribution Servs., Inc., 2010 WL 1706186 at *1 (D. N.J. Apr. 26, 2010) (citing Galgay v. Beaverbrook Coal Co., 105 F.3d 137, 139 (3rd Cir. 1997); see also Nat'l Shopmen Pension Fund v. DISA Indus., Inc., 2010 WL 1251446 at *3 (N.D. Ill. Mar. 24, 2010) (stating that "to make out a prima facie case for withdrawal liability, the Fund must establish that: (1) the Fund was a multiemployer plan within the definition of ERISA; (2) [the Defendant] received notice of its withdrawal liability; and (3) [the Defendant] failed to pay or contest its liability through arbitration").

Here, the Fund's Complaint includes enough facts to "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  First, the Fund has adequately pled that it is a multiemployer pension plan within the definition of ERISA.  In its Complaint, the Fund alleges that it is a multi-employer, jointly-trusteed fringe benefit plan and created and maintained pursuant to the Labor Relations Management Act.  (Compl. ¶ 1).  In addition, the Fund states that it is administered in accordance with ERISA.  Id.  The Fund further alleges that the Defendant is an employer within the meaning of section (3)(5) of ERISA.  (Compl. ¶ 3).[1]

---

[1] Pursuant to this section, an employer "means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for

Second, the Fund adequately pled that it demanded that Defendant pay withdrawal liability owed. Specifically, the Fund asserts that it demanded payment through a letter on March 3, 2010. (Compl. ¶ 12). This letter demanded that Defendant begin making quarterly payments of $9,166.00. (Compl. ¶ 15). In response, on June 1, 2010, Defendant requested review and reconsideration of the Fund's liability determinations pursuant to 29 U.S.C. § 1399. (Compl. ¶ 13). On July 22, 2010, the Fund again demanded withdrawal liability payments and provided Defendants with a schedule of payments detailing when payments were due. (Compl. ¶ 14).

Third, the Fund pled sufficient facts showing that the Defendant did not pay the requested withdrawal liability. In particular, the Fund states that the Defendant failed to submit the first or second payment due under the installation plan. (Compl. ¶¶ 17, 19). The Fund asserts that the Defendant has never initiated arbitration proceedings to request review of the withdrawal liability determination. (Compl. ¶ 16). Additionally, the Fund alleges that the Defendant's total withdrawal liability owed is $39,184.00 which can be paid in five quarterly payments. (Compl. ¶ 20). However, as the Fund asserts, the Defendant has failed and refused to pay any withdrawal liability owed to the fund. (Compl. ¶ 21). As such, the Fund alleges that the Defendant is in default. (Compl. ¶ 21). Moreover, the Fund provides additional facts asserting additional payments that it can obtain under ERISA including interest on the delinquent payments, liquidated damages, and attorneys fees and costs. (Compl. ¶¶ 22, 24).

---

an employer in such capacity." 29 U.S.C. §1002(5). Through the CBA, the Fund provides additional factual support demonstrating that Defendant meets this statutory definition. In the CBA, the Defendant agreed to "contribute every month . . . such sums for the fringe benefit funds as may be designated for each hour worked by all Employees covered by this agreement. The funds shall be known separately as the Laborers' Pension Fund . . . under separate Trust Agreements, copies of which the Employer will receive and to which the Employer is automatically bound." (Skoog Aff., Ex. B, p. 14). Thus, the Fund has laid out facts demonstrating that the Defendant is an employer under ERISA and agreed to contribute money to the Fund.

The facts laid out in the Fund's Complaint share similarities with the allegations in the plaintiff's complaint in <u>Teamsters Pension Trust Fund of Philadelphia and Vicinity</u>.[2] Like the plaintiff in the <u>Teamsters Pension</u> case, the Plaintiff here seeks withdrawal liability from the Defendant. In <u>Teamsters Pension</u>, the court found the plaintiff's allegations sufficient to survive a motion to dismiss. There, the complaint asserted that the plaintiffs sent a demand letter to the defendant, but the defendant never paid. <u>Teamsters Pension Trust Fund of Philadelphia and Vicinity v. Transworld Port & Distribution Servs.</u>, 2010 WL 1706186 at *2. The court noted that "[w]hile the Complaint cannot be accused of being overly-descriptive, it does contain sufficient facts to put Defendants on notice of what the claim against them is (an MPPAA violation), and does show that the claim is perhaps viable (an amount owed is alleged, and a lack of payment is alleged)." <u>Id</u>. Similarly, in the present case, as outlined above, the Fund has alerted the Defendant as to the type of claim being asserted, the amount allegedly owed and that the Defendant has not paid. As such, the Fund's allegations have raised its right to relief above the "speculative level," <u>Twombly</u>, 550 U.S. at 555, and have "nudge[d]" their claims "across the line from conceivable to plausible." <u>Iqbal</u>, 120 S.Ct. at 1950, 1952.

---

[2] In support of its argument, the Defendant compares the present ERISA claim to claims made pursuant to the Fair Labor Standards Act ("FLSA"). In particular, the Defendant cites <u>Bailey v. Border Foods, Inc.</u>, 2009 WL 3248305 (D. Minn. Oct. 6, 2009) and <u>LePage v. Blue Cross & Blue Shield of Minn.</u>, 2008 WL 2570815 (D. Minn. June 25, 2008). In both those cases, the Court found that the plaintiff did not cite enough facts that would allow the court to infer that they were actually paid less than minimum wage. Specifically, the plaintiffs in those cases did not cite any facts showing what their current hourly wage was such that the court could determine that they were paid less than minimum wage. In addition, plaintiff's allegations that there were many instances where they performed off the clock work without being paid minimum wage were not sufficient to meet the standards of <u>Twombly</u>. <u>LePage</u>, 2008 WL 2570815 at *2. However, FLSA claims can be distinguished from ERISA withdrawal liability claims. The FLSA's minimum wage requirements necessarily requires information in possession of the Plaintiffs, namely how much they are paid and how many hours they worked, in order to demonstrate whether the plaintiffs were plausibly paid less than minimum wage. In contrast, ERISA withdrawal liability claims also require information that cannot be known by the Plaintiff at the time of filing a claim, such as what type of work the Defendant is currently engaging in.

Additionally, the Fund has alleged sufficient facts that plausibly demonstrate that the Defendants owe withdrawal liability.[3] For instance, the Fund pleads facts demonstrating that the Defendant was obligated to contribute to the Fund. On July 31, 2002, the parties signed an Acceptance of Agreement agreeing to be bound to a CBA with the Highway, Railroad and Heavy Construction Contractors and the Laborers' District Council of Minnesota and North Dakota and its affiliated Unions. (Compl. ¶ 6). In the CBA, the Defendant agreed to "contribute every month . . . such sums for the fringe benefit funds as may be designated for each hour worked by all Employees covered by this agreement. The funds shall be known separately as the Laborers' Pension Fund . . . under separate Trust Agreements, copies of which the Employer will receive and to which the Employer is automatically bound." (Skoog Aff., Ex. B, p. 14).[4] In addition, the Fund asserts in its Complaint that the Defendant ceased having an obligation to contribute to the Fund when the CBA terminated on April 30, 2005. (Compl. ¶ 6, 9). Moreover, the Complaint states how much withdrawal liability the Defendant owes. (Compl. ¶ 12). The Complaint further requests additional damages in the form of interest payments, attorneys fees, costs, and liquidated damages. (Compl. ¶¶ 22, 23, 24).[5]

---

[3] While the Court recognizes that the Teamsters Pension case and other withdrawal liability case law only requires the plaintiff to show that withdrawal liability was demanded, but was not paid, other ERISA cases dealing with withdrawal liability suggest that there may need to be at least a minimal showing of facts demonstrating why the plaintiff is entitled to withdrawal liability under ERISA. See Central States, Southeast and Southwest Areas Pension Fund v. Heineman Distributing, Inc., 2010 WL 3404970 (N.D. Ill. Aug. 26, 2010) (finding that plaintiff's allegations in its complaint that the defendant withdrew from the fund, demanded payment and did not pay to be sufficient). Further, the Court notes that the cases cited by Teamsters Pension and other cases laying out the requirements for withdrawal liability claims were motions on summary judgment and while those cases provide guidance for a motion to dismiss case, they are not controlling.

[4] Contrary to Defendant's assertions otherwise, the CBA does not have to lay out that the Defendant agreed to be bound by ERISA in order for the statute to apply. ERISA, as a federal statute, applies regardless of whether the Defendant affirmatively agrees to be bound by it requirements. Likewise, Defendant argues that the correct Withdrawal Liability Policy needed to be attached to the Complaint. Unless ERISA specifically states that such a policy is required in order for the statute to apply and for withdrawal liability to be assessed, the document does not need to be attached to the Complaint. Consistent with representations by counsel for the Fund, the Withdrawal Liability Policy merely aids the Fund with its administration and is not a requirement for an employer to be bound by the guidelines set forth in ERISA.

[5] While the Defendant argues that the Fund must more specifically spell out how it arrived at its withdrawal liability contribution, the Court finds that the Fund has stated enough facts to place the Defendant on notice regarding the

In this respect, cases regarding the sufficiency of factual allegations in ERISA complaints support the Fund's arguments. In <u>Central States, Southeast and Southwest Areas Pension Fund</u> the Plaintiff pled that the defendant withdrew from the ERISA fund, that the Fund demanded withdrawal payment from the Defendant, and that the Defendant did not pay the amount demanded was sufficient to state a claim for withdrawal liability. There, the Court found the facts alleged sufficient to survive a 12(b)(6) motion to dismiss. <u>Central States, Southeast and Southwest Areas Pension Fund</u>, 2010 WL 3404970 at *3. Likewise, in <u>Trustees of the Nevada Resort Ass'n-Int'l Alliance of Theatrical Stage Employees & Moving Picture Machine Operators of the United States and Canada Local 720 Pension Trust v. Encore Productions, Inc.</u>, 2010 WL 2758113 at *2 (D. Nev. Jul. 12, 2010), the Court upheld a claim for withdrawal liability where the Plaintiff asserted that a CBA and Trust agreement existed and that the Defendant did not make all contributions to the fund.

In addition, because Defendant is an employer in the construction industry, the Fund must allege that the Defendant "continue[d] to perform work ... of the type for which contributions were previously required" in order to establish liability for withdrawal liability. 29 U.S.C. § 1383(b); <u>see</u> also <u>H.C. Elliott, Inc. v. Carpenters Pension Trust Fund for Northern California</u>, 663 F.Supp. 1016, 1020 (N.D. Cal. 1987) (finding that the Plaintiff must demonstrate that the Defendant continued to perform the same type of work for which contributions were previously required in order to survive a motion for summary judgment).

Here, the CBA states that covered work is

Heavy construction and railroad contracting work is defined as construction substantially in its entirety any fixed structure and other improvement or modification thereof, or an

---

possible claim. The Complaint asserts that the Fund calculated the amount pursuant to ERISA, the Trust Agreement, and the Withdrawal Liability Policy to which the Defendant agreed to be bound. (Compl. ¶ 20). This allegation notified the Defendant of the method used to calculate withdrawal liability. Any dispute over the method used to calculate withdrawal liability cannot appropriately be decided on a motion to dismiss.

11

> addition or repair thereto, including any structure or operation which is an incidental part of a contract thereof, including without limitation (not including Building Construction except as to work below grade and including grading on site), railroads and street railway construction projects, underground utilities, sewers, sewage treatment plants, watermains, grade separation, foundations, pile driving, piers, abutments, retaining walls, viaducts, shafts, tunnels subways, track elevation, elevated highways, drainage projects, sanitation projects, flood control projects, reclamation projects, reservoirs, water supply projects, water power development, hydro-electric development, duct lines, pipe lines, locks, dams, dikes, levees, revetments, channels, channel cutoffs, intakes, dredging projects, jetties, breakwater, docks, harbors industrial site, airports, (excluding general building construction) excavation and disposal of earth and rock, including the assembly operation, maintenance and repair of all equipment, vehicles, and other facilities used in connection with and serving the aforementioned work and services.

(Skoog Aff., Ex. B., p. 23-24). The Complaint further asserts that "upon information and belief, Defendant continues to perform work in the jurisdiction of the CBA of the type for which contributions were previously required." (Compl. ¶ 10). The Defendant contends that this statement merely constitutes a conclusory allegation. (Def.'s Mem., p. 7). However, looking at the Complaint together with the CBA, the facts alleged clearly lay out what constitutes covered work. Even though the Complaint only alleges "upon information and belief," in the context of this specific case, when the Court faces a claim for withdrawal liability between two parties who have had previous dealings together regarding an ERISA fund, the facts alleged in this Complaint are more than enough to nudge the claim from possible to plausible. It is not necessary that the Plaintiffs plead every specific project defendant and its employees may be currently engaged in performing; indeed this may be information that cannot fully be known to the Plaintiff but is within the control of the Defendant. Additionally, examining the Complaint as a whole, as the Court must, Plaintiff has asserted enough facts to give the "defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. As such, the Court recommends that the Defendant's motion to dismiss be denied because the facts

alleged in the Complaint provide much more "than a sheer possibility than [the] defendant has acted unlawfully." Farnham Street Financial, Inc., 2009 WL 4672668 at *4.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss [Docket No. 3] be **DENIED**.

Dated: March 17, 2011                                s/Leo I. Brisbois
                                                     LEO I. BRISBOIS
                                                     United States Magistrate Judge

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 31, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.